## AMERICAN ASSOCIATION OF RETIRED PERSONS, et al.

### v.

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant.

### Nos. 87–5060, 87–5161.

United States Court of Appeals, District of Columbia Circuit.

Argued May 12, 1987.

Decided July 10, 1987.

Mark B. Stern, Atty., Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., and Michael Jay Singer, Atty., Dept. of Justice, Washington, D.C., were on brief, for appellant.

Raymond C. Fay, with whom Thomas R. Gibbon and Burton D. Fretz, Washington, D.C., were on brief, for appellees.

Before RUTH BADER GINSBURG, BUCKLEY, and WILLIAMS, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

This case began as a suit to check an agency's alleged unreasonable delay; but because circumstances changed, it became a challenge to an agency's final decision not to take action. As it is now positioned, the case raises the following question: May a district court order an agency to proceed with rulemaking and publish final regulations adopting a particular interpretation of an ambiguous statute committed to its administration, even though the agency has made a final decision not to propose such regulations for public notice and comment?

Congress originally entrusted the administration of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 (1982) ("ADEA"), to the Department of Labor. 29 U.S.C. § 625 (1982). In 1979, the Department issued an interpretation of a section dealing with employee benefit plans which permitted employers, under certain circumstances, to terminate contributions and benefit accruals for individuals who reached normal retirement age under the plans. That same year the President reassigned the administration of the ADEA's key provisions to the Equal Employment Opportunity Commission. The Commission thus inherited the Department's interpretation. After prolonged deliberations extending over a period of years, the Commission approved, in May 1985, a proposal for the issuance of new rules governing employee benefit plans. A year later, provoked by what they perceived to be the agency's procrastination, appellees brought this action to compel completion of the rulemaking.*

On February 27, 1987, the district court found for the appellees and ordered the Commission to rescind the challenged interpretation, to proceed promptly with the rulemaking, and to publish a final rule within eighty days. 655 F. Supp. 228. The Commission appealed and moved for expedited consideration and for an emergency stay of the district court's order. Meanwhile appellees moved in district court for a citation of contempt against members of the Commission. The district court did not find contempt, but ordered that the Commission's final rule be substantive, rather than interpretive, and that it be effective on issuance. The Commission appealed from that order as well. We consolidated the two appeals, granted the motion for expedited consideration, and issued a stay of the district court's orders after oral argument. We now reverse and remand.

I. BACKGROUND

Appellees are Nella Gent, a sixty-six-year-old worker residing in Cincinnati, Ohio, and two national organizations representing members who work in interstate commerce past the age of fifty, the American Association of Retired Persons and the Older Women's League. They filed a complaint in the district court alleging that the Commission failed to carry out its regulatory duties under the ADEA with respect to employees who work past the age of sixty-five.

Section 4(a) of the ADEA provides in part as follows:

It shall be unlawful for an employer—

(1) to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age....

81 Stat. 603; 29 U.S.C. § 623(a) (1982). In 1978, however, Congress amended the ADEA by adding section 4(f), which creates an important exception to section 4(a)'s prohibition on age discrimination:

It shall not be unlawful for an employer, employment agency, or labor organization—

\*    \*    \*    \*    \*    \*

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this Act, except that no such employee benefit plan shall excuse the failure to hire any individual....

81 Stat. 603; 29 U.S.C. § 623(f) (1982).

In 1979, following the enactment of section 4(f), the Department of Labor issued

---

* In a case presenting similar facts, *Von Aulock v. Smith*, 720 F.2d 176 (D.C.Cir.1983), we found appellants without article III standing. In that case, appellants sought the invalidation of the Department's interpretation. As we found there was no assurance that employers would apply ADEA differently in the absence of agency guidance, we found the injury claimed was not fairly traceable to the challenged interpretation. As plaintiffs/appellees in the case before us seek the publication of a new rule, the Commission concedes traceability.

an Interpretative Bulletin ("IB") permitting employers, under specified circumstances, to discriminate among employees of different ages on such matters as the discontinuance of pension contributions and benefit accruals on behalf of employees reaching normal retirement age. Employee Benefit Plans; Amendment to Interpretative Bulletin, 44 Fed.Reg. 30,648, 30,658 (1979); 29 C.F.R. § 860.120 (1986). When the Commission assumed responsibility for the administration of this area of the ADEA, it stated that the IB would remain in effect pending review and the issuance of new regulations. Thus employers could continue to act in reliance on the IB pursuant to section 7(e) of ADEA, which provides in pertinent part:

> [N]o employer shall be subject to any liability ... if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation ... or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged.

29 U.S.C. § 259 (1982) (incorporated in 29 U.S.C. § 626 (e)(1) (1982)).

According to the complaint, the Commission determined repeatedly that the IB did not correctly interpret section 4(f), but unreasonably delayed action to rescind the IB and promulgate regulations barring age discrimination in employee benefit plans. The Commission's staff decided in the fall of 1979 that the IB was inconsistent with the ADEA. During the summer of 1980, the staff circulated proposed modifications to the IB for comment by other federal agencies; and on September 3, 1980, staff counsel submitted a memorandum and final proposed regulations to the Commissioners. A meeting of the full Commission to rule on the final regulations was scheduled for October 22, 1980, but was cancelled two days before the vote was to take place. The Commission took no further action on the matter until September 1983 when it published a request for public comment on the IB and the technical and financial aspects of the employee benefits issue. Age

Discrimination in Employment; Request for Comments, 48 Fed.Reg. 41,436 (1983).

Following staff assessment of the public response, the Commission voted unanimously on March 5, 1985 to approve a proposed Notice and Regulations ("proposed rules") that would result in a partial rescission of the IB and the issuance of new rules designed to prohibit certain aspects of employee benefit and pension plans that discriminated against older employees. See 1985 EEOC Proposed Rules: Proposed Partial Rescission of Interpretative Bulletin; Proposed Substantive Rules (Joint Appendix ("J.A.") at 193–206). The proposed rules were never published, however, and the IB remained in force until May 1987, when it was rescinded by the Commission pursuant to an order issued by the district court in this case. On two occasions the Commission's chairman assured congressional committees that new proposed regulations, and an accompanying "regulatory impact analysis," would soon be transmitted to the President's Office of Management and Budget ("OMB") for approval before publication, as required by Executive Order 12,291, 46 Fed.Reg. 13,193 (1981), reprinted in 5 U.S.C. § 601 (1982). These public assurances were never fulfilled.

Finally, on October 10, 1985, appellees filed a petition for rulemaking with the Commission requesting that the proposed rules be published and the IB rescinded. Eight months later, the Commission rejected the request, explaining that as various steps remained to be completed, it would be premature to proceed with the requested rulemaking. Appellees then brought this action in the district court under 5 U.S.C. § 706(1) (1982), which authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed."

The Commission assured the court that it would soon comply with appellees' request for rulemaking. In October 1986, however, a bill amending the ADEA became law. Omnibus Budget Reconciliation Act, Pub.L. No. 99–509, §§ 9201 to 9204, 100 Stat. 1874, 1973–80 (1986) ("1986 amendments"). It provides in part that the Commission "shall

... issue before February 1, 1988, such final regulations as may be necessary to carry out the amendments made by this subtitle." *Id.* § 9204(e). Citing the new law, the Commission voted on November 10, 1986, to terminate the rulemaking.

The Commission considered various factors in reaching its decision, including the following: the proposed rules (1) could not be finalized until September 1987; (2) are not identical to the regulatory scheme mandated for early 1988 by the 1986 amendments; (3) would submit employers to great expense in trying to comply with two major regulatory changes in the space of a few months; and (4) would not be a wise use of agency resources given the Commission's new task of complying with the February 1988 deadline just set by Congress. Transcript of Discussion of Accrual of Pension Benefits Beyond Normal Retirement Age, November 10, 1986—Commission Meeting ("November 10 decision") (J.A. at 345–49). It unanimously approved Commissioner Silberman's motion "that we terminate proceeding and use those resources to draft regulations to implement the new legislation." *Id.* at 353.

The Commission argued in district court that as it had not voted to approve the new rules until March 5, 1985, it could not be charged with unreasonable delay. It also pointed to its November 10 decision terminating the rulemaking process as evidence that it had in fact taken action. *American Assoc. of Retired Persons v. EEOC*, 655 F.Supp. 228, (D.D.C.1987) ("Feb. 26 Op."). The district court disagreed. Relying on the "rule of reason" to which this court referred in *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70, 80 (D.C.Cir.1984) (*"TRAC"*), the district court dismissed the Commission's argument as "absurd," and gave only fleeting consideration to the agency's account of the reasons for its November 10 decision and the circumstances that prompted that decision. Specifically, the district court stated that because the legislative history of the 1986 amendments indicated that the amendments were "designed to have no effect on the existing legal situation[,] the EEOC is as free today to adopt rules or rescind the

Bulletin as it was before [enactment of the 1986 amendments]." Feb. 26 Op. at 238 n. 38. The court also observed that compliance with its order would not overly tax the Commission.

The court deplored the agency's failure "to take formal, meaningful action when it knows its existing interpretation of the law to be erroneous and has repeatedly shouted the error from the housetops (but never from the pages of the Code of Federal Regulations)." Feb. 26 Op. at 240–241. It expressed particular distress because "the government agency which has engaged in these tactics detrimental to workers over 65 is not one, such as the Department of Commerce, which might perhaps legitimately have an outlook favorable to business interests, but, sadly, a commission created by the Civil Rights Act of 1964...." *Id.* at 241. The court concluded that a writ of mandamus was appropriate and ordered the following action to satisfy appellees' demands: rescission of the IB within twenty days; prompt publication for public notice and comment of "the proposed pension rule voted on at [the Commission's] March 5, 1985 meeting, or a similar rule, which would require pension contributions, credits, and accruals for employees working beyond 'normal' retirement age to age 70"; and publication of a final rule within eighty days. *Id.* at 241.

The Commission rescinded the IB and appeals only the portion of the district court's judgment requiring publication of proposed and final rules. It stresses that its November 10 decision not to publish proposed rules was reasonable. Appellees respond that the record displays deplorable agency inaction and double-dealing, and contend that the 1986 amendments do not require regulations significantly different from those the Commission cancelled in its November 10 decision. Although in their complaint appellees challenged the constitutionality of Executive Order 12,291, they have not pursued that argument on appeal, and we do not reach it.

## II. DISCUSSION

This case concerns an agency's final action terminating a proposed rulemaking

that would have resulted in specific changes in the standing construction of a statute committed to its administration. At its November 10, 1986 meeting, the Commission considered whether it should continue to pursue the proposed rules in light of the recently adopted 1986 amendments. After considering alternative options, its members voted to terminate the rulemaking and to concentrate instead on preparing the new regulations that would have to be in place in less than fifteen months. Because the Commission's November 10 decision was plainly a final action well within its statutory powers, the district court's judgment, grounded on the Commission's unreasonable delay in performing its statutory duties, must be reversed and its order vacated.

Section 4(a) of the ADEA forbids employers to discriminate against employees or prospective employees on the basis of age, but section 4(f) states that "it is not unlawful for an employer ... to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this Act, except that no such employee benefit plan shall excuse the failure to hire any individual." 81 Stat. 603; 29 U.S.C. § 623(f)(2) (1982). The ADEA does not define the terms "bona fide" or "subterfuge," and section 4(f) does not indicate whether the "purposes" of the ADEA include the apparent objective of section 4(f)(2), i.e., to permit a limited degree of age discrimination in bona fide plans. As the Supreme Court recently observed, however, statutes are records of legislative compromise, and the best guide to the purposes of a statute is the language of the statute itself. *Board of Governors of the Fed. Reserve Sys. v. Dimension Financial Corp.*, 474 U.S. 361, 106 S.Ct. 681, 689, 88 L.Ed.2d 691 (1986). On reading subsections 4(a) and 4(f)(2) of the ADEA, we can find nothing to suggest the Commission is required to issue the regulations sought.

Neither can we find such a requirement in section 9 of the ADEA, which confers broad discretion on the Secretary, and now on the Commission, to determine what regulations, if any, are appropriate to implement section 4. Section 9 provides that the Commission

*may* issue such rules and regulations as it *may* consider necessary or appropriate for carrying out this chapter, and *may* establish such reasonable exemptions to and from any or all provisions of this chapter as it *may* find necessary and proper in the public interest.

29 U.S.C. § 628 (1982) (emphasis added). It would be very difficult to find more permissive statutory language. We cannot in any way conclude that sections 4 and 9 of the ADEA *require* the Commission to publish the regulations sought. On the contrary, we read those sections to authorize the Commission not to transmit to OMB any proposal for ADEA regulations forbidding age discrimination in employee benefit programs.

We find ourselves in basic disagreement with the district court over the way the November 10 decision is to be categorized. That court evidently saw it as yet another dilatory tactic in a history of delays that it traced back over a period of seven years. Thus relying on our decision in *TRAC*, which is addressed to the problem of agency inaction, it arrived at the conclusion that the Commission had unreasonably delayed the rescission of the IB and the conclusion of the rulemaking. We, however, see the November 10 decision as a decisive act that brought a prolonged period of stop-and-go deliberations to a close.

However one might wish to categorize the Commission's behavior in the years prior to November 1986, the enactment, on October 21, 1986, of the 1986 amendments clearly required the Commission to conduct an immediate review of the rulemaking. This it did, and its decision on November 10 to terminate the rulemaking constitutes not a dilatory tactic, but an affirmative, final disposition of the matter. Thus by its action, which was both final and fully within its authority, the Commission rendered appellees' objection moot because all they were entitled to seek under 5 U.S.C. § 706(1) (1982) was that the agency act in a

lawful manner, not that it act in a particular way.

Section 706(1) does not provide a court with a license to substitute its discretion for that of an agency merely because the agency is charged with having unreasonably withheld action. Here we deal with an agency that has not only finally acted, but one that has been granted unusually broad discretion, including the discretion not to act. Yet, the district court's order would impose a particular reading of section 4 on the Commission even though the language of that section is ambiguous and committed to the agency for interpretation. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We have held in the past that very strong reasons counsel against such imposition. In *Public Citizen Health Research Group v. Commissioner, Food & Drug Administration,* 740 F.2d 21, 28 (D.C.Cir.1984) *("PCHRG"),* we declined to make "a judicial determination *in the first instance* that aspirin products are misbranded as a matter of law" within the meaning of 21 U.S.C. § 352(f) (1982) (a drug is "misbranded" if its label does not bear "adequate warnings") (emphasis in original). The court held that such an interpretation would interfere with an agency's congressionally delegated responsibility to interpret section 352(f). *PCHRG,* 740 F.2d at 28.

Moreover, the double "mays" imbedded in section 9 effectively relieve the Commission of any duty to promulgate a regulation. This raises obvious questions as to the reach of section 706(1), which permits courts to "compel agency action unlawfully *withheld* or unreasonably *delayed"* (emphasis added). The terms "withheld" and "delayed" clearly imply some duty to act. *PCHRG,* for example, involved a statute that allegedly placed the agency "under a mandatory duty to require warning labels or to remove aspirin products from the market." 740 F.2d at 28. In the case now before us, however, the Commission has no such statutory duty. It may be argued, of course, that an agency without a duty to act may nonetheless create expectations or circumstances that will entitle a court to invoke the authority of section 706(1) to compel final action. That question is not before us, however, because in this case the agency has in fact acted; and any expectations its years of vacillation may have raised have now been set to rest.

Appellees also argue that the Commission failed to explain its November 10 decision adequately. We do not rule on this issue because the Commission will have an opportunity on remand to restate or redefine its position in light of the change in circumstances (occasioned by rescission of the IB) since the November 10 decision.

Accordingly, we conclude that the district court exceeded its authority in ordering rulemaking. Nevertheless, as the agency did not appeal from, and has in fact complied with, the directive to rescind the IB, the Commission remains bound by that portion of the district court's order. We note, however, that the question of the legality of the interpretation embodied in the IB remains open. Therefore, unless and until the Commission issues further guidance, employers must make their own independent determinations of what is required of them with respect to benefits, under existing plans, for employees above the normal retirement age. This may create confusion for employers and employees as they try to determine their rights and obligations under the currently applicable provisions of the ADEA. The Commission's failure to appeal from the order to rescind the IB precludes any definitive action on our part.

### III. CONCLUSION

We reverse the district court's decision, vacate that part of its order directing the Commission to publish proposed and final rules regarding pension plan requirements for employees who continue to work beyond the normal retirement age, and instruct the court to remand the case so that the Commission may take whatever further action it may deem appropriate in light of changed circumstances since its meeting of November 10, 1986.

*So ordered.*