# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 26, 2009          Decided June 5, 2009

No. 08-5148

ENTERPRISE NATIONAL BANK,
APPELLANT

v.

THOMAS J. VILSACK, SECRETARY,
UNITED STATES DEPARTMENT OF AGRICULTURE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cv-01344)

*John J. Richard* argued the cause for the appellant.

*Heather Graham-Oliver*, Assistant United States Attorney, argued the cause for the appellee. *Jeffrey A. Taylor*, United States Attorney at the time the brief was filed, and *R. Craig Lawrence*, Assistant United States Attorney, were on brief.

Before: HENDERSON, TATEL and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Enterprise National Bank n/k/a Enterprise Bank of Florida (Enterprise)

made a loan guaranteed in part by the United States Department of Agriculture (Agriculture). When the borrower defaulted, Agriculture declined to honor its guarantee based on Enterprise's allegedly negligent loan servicing. After Enterprise obtained a favorable decision *via* Agriculture's administrative appeals process, Agriculture paid a portion of Enterprise's loss claim. Enterprise filed suit in district court seeking an order compelling payment of its loss claim in full. On cross-motions for declaratory judgment, the district court granted Agriculture's motion. *Enter. Nat'l Bank v. Johanns*, 539 F. Supp. 2d 343, 347 (D.D.C. 2008). For the reasons set forth below, we affirm the district court's judgment.

## I.

Agriculture's Rural Business-Cooperative Service (RBS) administers the Business and Industry Guaranteed Loan Program (B&I Program). *See* Business and Industrial Loan Program, 61 Fed. Reg. 67,624 (Dec. 23, 1996).[1] Under the B&I Program, Agriculture guarantees loans made by private lenders to rural businesses "to improve, develop, or finance business,

---

[1]Agriculture has many subparts, some of which Agriculture classifies as "agencies." For example, RBS is referred to as an "agency" in the regulations setting forth Agriculture's appeals procedure. 7 C.F.R. § 11.1. To avoid confusion, we refer to each agency within Agriculture by name. The Agriculture Secretary established RBS pursuant to 7 U.S.C. § 6944(a) ("[T]he Secretary is authorized to establish and maintain within the Department the Rural Business and Cooperative Development Service . . . ."). *See* 7 C.F.R. § 2003.26. RBS's Administrator operates under the direction of the Under Secretary for Rural Economic and Community Development, *id.* § 2.48, and is authorized to "[c]ollect, service, and liquidate loans made, insured, or guaranteed by [RBS]." *Id.* § 2.48(a)(14). RBS administers the B&I Program through a Rural Development State Director in each state, *id.* § 1980.401(d), including, in this case, the State Director for Georgia.

industry, and employment and improve the economic and environmental climate in rural communities." 7 C.F.R. § 4279.101(b); *see also* 61 Fed. Reg. at 67,624. The private lender is responsible "to ascertain that all requirements for making, securing, servicing, and collecting the loan are complied with." 7 C.F.R. § 4279.1(b). Agriculture guarantees payment to the lender of "[a]ny loss sustained by the lender on the guaranteed portion [of the loan], including principal and interest" or "[t]he guaranteed principal advanced to or assumed by the borrower and any interest due thereon," whichever is less. *Id.* § 4279.72(a)(2)(i) & (ii). To receive payment, the lender must submit a final report of loss to Agriculture with supporting documentation. *Id.* § 4287.158(c). Agriculture reviews the report and, upon approval, makes a loss payment to the lender within 60 days. *Id.* § 4287.158(c)(6), (g). Under the B&I Program, Agriculture's guarantee is "unenforceable by the lender to the extent any loss is occasioned by the violation of usury laws, negligent servicing, or failure to obtain the required security." *Id.* § 4279.72(a).[2]

On July 19, 1999, Enterprise entered into a $5 million loan agreement with Catfish, INT., Inc. (Catfish) as the borrower and

---

[2]7 C.F.R. § 4279.72(a) provides in part:

Full faith and credit. A guarantee under this part constitutes an obligation supported by the full faith and credit of the United States and is incontestable except for fraud or misrepresentation of which a lender or holder has actual knowledge at the time it becomes such lender or holder or which a lender or holder participates in or condones. . . . In addition, the guarantee will be unenforceable by the lender to the extent any loss is occasioned by the violation of usury laws, negligent servicing, or failure to obtain the required security regardless of the time at which the Agency acquires knowledge thereof.

Erwin David Rabhan, president of Catfish, as the guarantor. Catfish was obligated to use the loan proceeds for the development of a catfish processing and distribution facility in Georgia. Agriculture, acting through its Georgia State Director, guaranteed 75% of the loan ($3.75 million) under the B&I Program.[3] The Loan Note Guarantee incorporated the language of 7 C.F.R. § 4279.72(a), *supra* note 2. Loan Note Guarantee at 2, Joint Appendix (JA) 63 (Oct. 1, 1999) (Loan Note Guarantee). It also defined "negligent servicing" as "the failure to perform those services which a reasonably prudent lender would perform in servicing . . . its own portfolio of loans that are not guaranteed." *Id.* Catfish subsequently defaulted. Agriculture's Office of Inspector General (OIG) investigated Catfish's president and its general contractor and discovered that they had "conspire[d] to defraud [Agriculture and Enterprise] out of a $5 million guaranteed B&I loan they were not entitled to receive." OIG Report of Investigation at 1, JA 755 (Feb. 4, 2003) (OIG Report). Catfish's president as well as the general contractor both pleaded guilty to one count of conspiracy and were both sentenced to a term of imprisonment.

In November 2002, Enterprise reported a $4,213,434 loss to the State Director and requested $3,160,075 (75% of the loss) under the guarantee. On May 22, 2003, the State Director denied Enterprise's claim in full based on Enterprise's allegedly negligent servicing. He relied on the OIG Report's finding that Enterprise's "lack of due diligence and negligence allowed for fraudulent actions by [Catfish]" and that Enterprise "did not comply with several conditions" of the guarantee. Letter from F. Stone Workman, State Director, USDA Rural Development, to R. Penny Rodgers, Vice President, Enterprise Bank, at 2, JA 208 (May 22, 2003).

---

[3]Agriculture initially guaranteed 70% of the loan but later increased the guarantee to 75% of the loan.

Enterprise appealed the State Director's decision to the National Appeals Division (Division). *See* 7 U.S.C. § 6996(a) (right to appeal adverse decision to Division); 7 C.F.R. § 11.1(6) (adverse decision includes Rural Business-Cooperative Service decision).[4]  After a hearing, the Division hearing officer upheld the State Director's decision.  Enterprise sought the Division director's review.  The director may uphold, reverse or modify the hearing officer's determination or remand all or a portion of the determination for further proceedings if the hearing record is inadequate or new evidence has been submitted.  7 C.F.R. § 11.9(d)(1).  The Division director remanded Enterprise's case because the hearing officer had not complied with certain procedural regulations.  On December 2, 2005, another hearing officer issued a fifteen-page Remand Appeal Determination (RAD) containing, *inter alia*, the following findings of fact.  First, "[Enterprise] failed to ensure that its borrower contributed $2,950,000 to the project, and this occasioned a loss of $2,950,000."  Remand Appeal Determination at 13, *Enter. Nat'l Bank*, No. 2004S000154 (Dec. 2, 2005) (RAD).  Second, "[Enterprise] did not ensure that its borrower built [a maintenance shed and guardhouse valued at $80,000 and] . . . the absence of the facilities occasioned a loss of $80,000."  *Id.*

---

[4]The Division is "an organization within the Department [of Agriculture] . . . which is independent from all other agencies and offices of the Department."  7 C.F.R. § 11.2(a).  The Division is headed by a director who "reports directly to the [Agriculture] Secretary."  *Id.*; *see also id.* § 11.22(a).  The Division hears appeals from "adverse decisions" by Agriculture "agencies."  *Id.* § 11.6(b)(1); *see id.* § 11.1.  An adverse decision is "an administrative decision made by an officer, employee, or committee of an agency that is adverse to a participant."  *Id.* § 11.1.  The Division director assigns an appeal to a Division hearing officer, *id.* § 11.8(b)(2), who conducts a hearing and issues a "determination," *id.* § 11.8(f).  Both the participant and Agriculture may seek the Division director's review of the hearing officer's determination.  *Id.* § 11.9(a).

at 12. The hearing officer concluded the Discussion portion of the RAD as follows: "RBS's decision is erroneous because RBS has not correctly calculated the extent to which the alleged negligence and other factors occasioned a loss." *Id.* at 15. The Determination section of the RAD concluded:

> Under 7 C.F.R. § 11.8(e), [Enterprise] has the burden of proving the adverse decision is erroneous by a preponderance of the evidence. [Enterprise] has proven that [Agriculture's] decision is erroneous.

> This is a final determination of the Department of Agriculture unless a party to the appeal files a timely request for review.

*Id.* Neither party appealed the RAD and it became the Division's final determination. *See* 7 C.F.R. § 11.8(f) (hearing officer's determination final if not appealed); 7 C.F.R. § 11.9(a)(1) (participant must appeal hearing officer determination within 30 days after receipt), (2) (agency must appeal hearing officer determination within 15 days after receipt). "On the return of a case to an agency pursuant to the final determination of the Division, the head of the agency shall implement the final determination not later than 30 days after the effective date of the notice of the final determination." *Id.* § 11.12(a). "Implement" is defined as "the taking of action by an agency of the Department in order fully and promptly to effectuate a final determination of the Division." *Id.* § 11.1.

On January 12, 2006, Enterprise's counsel contacted Agriculture's Office of General Counsel by telephone regarding the loss claim. Letter from John J. Richard, Attorney, Powell Goldstein LLP, to Mark Lee Stevens, USDA Office of General Counsel, JA 26-27 (Jan. 12, 2006) (memorializing telephone conversation). According to Enterprise's counsel, he "discussed [with the General Counsel's office] . . . that [Agriculture was] currently processing [Enterprise's] loss claim for payment in full

plus accrued interest." *Id.* at 1, JA 26. On March 3, 2006, however, the State Director notified Enterprise that Agriculture would pay only $956,252.19 under the guarantee. He explained that Enterprise's loss claim had been reduced by $3,030,000 based on Enterprise's negligent servicing, citing the hearing officer's findings that Enterprise had caused a loss of $2,950,000 based on Catfish's failure to make the required equity injection and another $80,000 loss based on Catfish's failure to build the maintenance shed and guardhouse.

On July 28, 2006, Enterprise filed a complaint in the district court pursuant to 7 U.S.C. § 6999[5] seeking a declaratory judgment and an order compelling Agriculture to "process[] the remainder of [Enterprise]'s loss claim for payment in full plus accrued interest without delay." Compl. at 19, *Enter. Nat'l Bank*, 539 F. Supp. 2d 343 (No. 06-cv-1344). Enterprise alleged that the State Director had "refused to comply with the [Division's] final determination," which, Enterprise claimed, required Agriculture to pay the full loss claim. *Id.* The parties filed cross-motions for declaratory judgment and the district court granted Agriculture's cross-motion. *Enter. Nat'l Bank*, 539 F. Supp. 2d at 347. Enterprise timely appealed pursuant to 28 U.S.C. § 1291.

## II.

"In reviewing *de novo* the district court's grant of summary judgment on [an agency's] administrative decisions, we directly review those decisions." *Mount Royal Joint Venture v. Kempthorne*, 477 F.3d 745, 753 (D.C. Cir. 2007) (citing *Castlewood Prods., LLC v. Norton*, 365 F.3d 1076, 1082 (D.C.

---

[5]"A final determination of the Division shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of Title 5." 7 U.S.C. § 6999; *see also* 7 C.F.R. § 11.13 (tracking statute).

Cir. 2004)). As noted earlier, we review a Division final determination under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-06. *See Deaf Smith County Grain Processors, Inc. v. Glickman*, 162 F.3d 1206, 1213 (D.C. Cir. 1998) ("[Section] 6999 mandates that the District Court review . . . the final determination of the [Division] under the APA's 'arbitrary and capricious' standard of review."). Because neither side appealed the RAD, it constitutes the "final determination of the Division" and thus falls within 7 U.S.C. § 6999.

Enterprise seeks relief "compelling agency action unlawfully withheld" under 5 U.S.C. § 706(1), Compl. at 1, arguing that the RAD required full payment of its loss claim, not the partial payment Agriculture offered. Under section 706(1), the plaintiff must "'assert[] that an agency failed to take a *discrete* agency action that it is *required to take*.'" *Kaufman v. Mukasey*, 524 F.3d 1334, 1338 (D.C. Cir. 2008) (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004)) (emphases in *S. Utah Wilderness Alliance*). "[W]hen an agency is compelled by law to act, but the manner of its action is left to the agency's discretion, the 'court can compel the agency to act, [although it] has no power to specify what th[at] action must be.'" *Id.* (quoting *S. Utah Wilderness Alliance*, 542 U.S. at 65) (alterations in *Kaufman*); *see also Am. Ass'n of Retired Pers. v. EEOC*, 823 F.2d 600, 605 (D.C. Cir. 1987) ("Section 706(1) does not provide a court with a license to substitute its discretion for that of an agency merely because the agency is charged with having unreasonably withheld action."). Because the RAD did not expressly order the performance of a discrete action, however, we must review Agriculture's implementation of the RAD as action taken within its discretion.[6]

---

[6]Indeed, the hearing officer *may* not be empowered to order any action. According to the regulations, only the Division director is explicitly given the "authority to grant equitable relief." 7 C.F.R.

The RAD determined that the State Director's decision to "reduce[] [Enterprise's] . . . loss claim to zero" was "erroneous." RAD at 15. Nevertheless, that conclusion was preceded by the hearing officer's detailed discussion of how Enterprise's negligent loan servicing caused $3,030,000 of the loss. Under the Conditional Commitment, Rabhan was required "to contribute $2,950,000 from personal funds . . . to secure the guaranteed loan." *Id.* at 13; *see* Conditional Commitment at 1, JA 109 (June 24, 1998) ("[Agriculture] . . . will execute [the Loan Note Guarantee,] subject to the conditions and requirements specified in the regulations and herein."). Enterprise was required to ensure that Rabhan made the equity injection. RAD at 13. Although both Rabhan and the general contractor averred in affidavits that Rabhan made the equity injection, he had not in fact done so. *Id.* at 13-14. According to the hearing officer, Enterprise "did not check . . . bank records or perform other due diligence to ensure" that Rabhan made the equity injection, which failure "occasioned a loss of

---

§ 11.9(e). "Equitable relief" is defined as "relief which is authorized under . . . laws administered by the agency." *Id.* § 11.1. Moreover, the National Appeal Division Guide states that the hearing officer "has no authority . . . to order any action by the agency." National Appeal Division Guide at 48 (2004), *available at* http://www.nad.usda.gov/ nadguide.pdf (Guide). The Guide gives the following example: "[I]f the Hearing Officer determines that a real estate appraisal was not performed in a manner consistent with applicable regulations, the errors in the appraisal will be noted, but the determination will not direct the agency on how a new appraisal is to be performed." *Id.* The Guide states that a hearing officer "does not have the authority to grant equitable relief." *Id.* at 49. A hearing officer may determine whether an agency erred in denying equitable relief but a determination that an agency erred "is not itself a grant of relief by the [h]earing [o]fficer." *Id.* We need not decide the deference, if any, we owe the Guide because, regardless whether the hearing officer can order relief, he did not do so.

$2,950,000." *Id.* The hearing officer also found that Catfish's "plans for the project included a maintenance shed and guardhouse valued at $80,000," which it was obligated to build but, again, did not do. *Id.* at 5, 12. Enterprise likewise failed "to ensure that [Catfish] buil[d] these structures," which "occasioned a loss of $80,000." *Id.* at 12. As noted earlier, Agriculture was not required to honor the guarantee "to the extent any loss is occasioned by . . . negligent servicing." Loan Note Guarantee at 2, JA 63. Although the hearing officer did not include in the Determination section of the RAD the precise amount that he concluded Agriculture owed Enterprise under the Loan Note Guarantee, we believe the State Director reasonably interpreted the RAD in reducing the loss claim by $3,030,000.[7] And, accordingly, the district court correctly upheld Agriculture's interpretation of the RAD and concluded—again correctly—that its implementation thereof was neither arbitrary nor capricious. *See Purepac Pharm. Co. v. Thompson*, 354 F.3d

---

[7]Enterprise asserts, however, that the State Director may not look beyond the Determination section of the RAD. It relies on the Guide, which provides that "[t]he appeal determination is limited to whether the agency erred or did not err in the adverse decision." Division Guide at 48. The Guide also states, however, that the hearing officer's "[f]indings of fact and conclusions constitute the essentials of the appeal determination," *id.* at 47, indicating that the State Director *can* look beyond the Determination section. Further, even if we accept Enterprise's assertion, the State Director's action is consistent with the Determination section. In that section, the hearing officer found that Agriculture's "decision is erroneous." RAD at 15. The "decision" referred to is the State Director's initial decision to reduce the loss claim to zero. *Id.* Construing only the Determination section, then, the State Director could calculate the loss claim in an amount other than zero. His decision to reduce the loss claim by $3,030,000—the loss caused by Enterprise's negligent loan servicing—reasonably implements the Determination section.

877, 883 (D.C. Cir. 2004) (upholding FDA's denial of exclusive right to sell generic drug under APA review).

Enterprise makes two additional arguments that we find without merit. First, it argues that no evidence supported Agriculture's decision to reduce the loss claim to $956,252.19. Agriculture had relied on the OIG Report in initially reducing the loss claim to zero. The hearing officer on remand, however, *see supra* p. 5, excluded the OIG Report from evidence because Agriculture had submitted it to him ex parte. RAD at 7-8. He found that Enterprise's negligence had caused $3,030,000 in losses based on evidence other than the excluded OIG Report, including the testimony of Enterprise employees themselves. *Id.* at 5, 12-13. Once the hearing officer issued the RAD, Agriculture relied on his detailed findings of fact to calculate Enterprise's loss.

Second, Enterprise argues that the district court erred in failing to consider evidence that Agriculture acted in bad faith both in entering into the loan guarantee and during the administrative appeal process.[8] The hearing officer found that Agriculture did not disclose to Enterprise that Rabhan had attempted to defraud another lender as well as Agriculture in 1995. In its complaint, Enterprise alleged that Agriculture officials had taken kickbacks from borrowers, including Rabhan, in exchange for loan guarantees. The hearing officer found that the RBS's "failure to warn [Enterprise] did not cause the losses in question," a finding that Enterprise does not challenge. RAD at 14. Instead of claiming that Agriculture's bad faith conduct led to an erroneous RAD, Enterprise argues only that

---

[8]The district court concluded that "[Enterprise's] many arguments regarding [Agriculture's] bad faith in its participation in the [Division] review cannot be considered here, as this court looks only to the final [Division] determination." *Enter. Nat'l Bank*, 539 F. Supp. 2d at 345 n.1.

Agriculture *interpreted* the RAD in bad faith.  Specifically, in its brief to us, Enterprise maintains—without elaboration—that Agriculture's bad faith "goes directly to the context in which the Agency made its decision to ignore the [RAD's] operative holding and . . . deny the Bank's loss claim."  Appellant's Br. at 21.  As thus framed, Enterprise's bad faith argument hinges on our concluding that Agriculture "ignore[d]" the RAD in reducing the loss claim to $956,252.19.  *See also* Oral Argument at 10:28, *Enter. Nat'l Bank v. Vilsack*, No. 08-5148 (argued Mar. 26, 2009) (Enterprise's counsel:  "[I]n a further example of the bad faith that pervaded [Agriculture's] treatment of [Enterprise] throughout the entire process . . . they decided . . . they were simply going to ignore what the [hearing officer] said.").  But because we conclude that—far from ignoring the RAD—Agriculture used the detailed findings included therein to reduce Enterprise's claim to $956,252.19, Enterprise's bad faith claim fails.  Agriculture showed no bad faith in interpreting the RAD to mean what it said.

For the foregoing reasons, we affirm the district court's judgment.

*So ordered.*