# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 15, 2013       Decided February 4, 2014

No. 12-5331

CAROLYN JUREWICZ, ET AL.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF AGRICULTURE AND
HUMANE SOCIETY OF THE UNITED STATES,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01683)

*Ira T. Kasdan* argued the cause for appellants. With him on the brief was *Elizabeth C. Johnson*.

*Alan Burch*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

*Aaron D. Green* and *Jonathan R. Lovvorn* were on the brief for intervenor The Humane Society of the United States in support of appellee.

Before: GARLAND, *Chief Judge*, ROGERS, *Circuit Judge*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: In this reverse-FOIA case, dog breeders and dealers in Missouri challenge the Department of Agriculture's decision to release information in their annual reports relating to their gross revenue and business volume. They contend the information requested by the Humane Society of the United States under the Freedom of Information Act ("FOIA") is covered by Exemptions 4 and 6, which protect confidential commercial or financial information and personal privacy, respectively, and that the Department's reasoning was arbitrary and capricious. For the following reasons, we affirm the grant of summary judgment to the Department and the Humane Society.

**I.**

The Animal Welfare Act requires dealers of animals, including dogs, to obtain an annual license from the Department of Agriculture. 7 U.S.C. § 2134. The Department must charge a licensing fee that is "reasonable" and "adjusted on an equitable basis taking into consideration the type and nature of the operations to be licensed." *Id.* § 2153. Under Department regulations, dealers renew their licenses by paying the required fee and filing an application and annual report, Form 7003, with the Animal and Plant Health Inspection Service ("the Service"). 9 C.F.R. § 2.5(b). Block 8 (or Block 10 in some versions) of Form 7003 asks for (1) the total number of animals purchased and sold in the last year; (2) the gross revenue from regulated activities; and (3) for dealers that are not breeders, the difference between the purchase price and sale price of the animals sold. In addition, the Service conducts on-site inspections of licensed breeders and dealers and publishes the inspection reports on its website; those reports include the number of dogs counted at the time of the inspection.

In 2009, the Humane Society submitted three FOIA requests for copies of Form 7003s received by the Service. The first two named specific licensees; the third requested Form 7003s for "all dog breeders and dealers" in Missouri. Initially, the Department determined that Block 8 information was covered by Exemptions 4 and 6, and redacted it before releasing the forms to the Humane Society. The Humane Society appealed in May 2010, and when it failed to receive a response, it filed suit in October 2010. While this lawsuit was pending, the Department solicited comments from the affected licensees on whether they thought releasing Block 8 information would cause substantial competitive harm. Upon reviewing the responses, the Department concluded the information should be released and notified the licensees in March 2011.

In April 2011, appellants, who are (or whose members are) licensed dog breeders and dealers in Missouri, sued to prevent release of the Block 8 information. The Department moved for a voluntary remand upon discovering an error in the March 2011 decision letter, which was granted. On remand, the Department solicited additional comments. After review of these comments, the Department again concluded that no FOIA exemption applied to the Block 8 information and that the information should be released. Appellants filed a second amended complaint, and the parties filed cross motions for summary judgment. The district court granted summary judgment to the Department and the Humane Society. Appellants appeal, and this court directly reviews the Department's decision under the Administrative Procedure Act, 5 U.S.C. § 701 ff. *See Enterprise Nat'l Bank v. Vilsack*, 568 F.3d 229, 233 (D.C. Cir. 2009).

**II.**

Under FOIA, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in

accordance with published rules . . . , shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Certain categories of information are exempt from this general disclosure requirement, but the exemptions are to be "narrowly construed." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). Appellants contend the Department's decision to release the Block 8 information is arbitrary and capricious in concluding release of the total number of animals bought and sold by appellants, and their gross revenues, would not cause them substantial competitive harm. They rely on Exemption 4, which covers "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Likewise, appellants contend that the public interests identified by the Department would not be served by release and, alternatively, the Department failed to give appropriate weight to their private interests in balancing the public and private interests. They rely on Exemption 6, which covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* § 552(b)(6).

In a reverse-FOIA case, the court must uphold the Department's decision to release the Block 8 information in appellants' Form 7003s unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see United Techs. Corp. v. Dep't of Def.*, 601 F.3d 557, 562 (D.C. Cir. 2010). Unlike a typical FOIA case, in which the court would undertake its own analysis of the interests at stake, *see, e.g.*, *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224 (D.C. Cir. 2008); *Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health and Human Servs.*, 554 F.3d 1046 (D.C. Cir. 2009), under this deferential standard of review, the court does not substitute its judgment for that of the Department, but the Department must "examine the relevant data and articulate a satisfactory explanation for its action

including a 'rational connection between the facts found and the choice made,'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal citation omitted). The court does not defer to "conclusory or unsupported suppositions." *United Techs.*, 601 F.3d at 562 (quoting *McDonnell Douglas Corp. v. Dep't of the Air Force*, 375 F.3d 1182, 1187 (D.C. Cir. 2004)).

**A.**

Exemption 4 protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The only question here is whether the Block 8 information, which is "commercial or financial information" and not "privileged," is "confidential." Here, "confidential" means that "disclosure would be likely either '(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.'" *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 878 (D.C. Cir. 1992) (en banc) (quoting *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974)). This requires a showing of both actual competition and a likelihood of substantial competitive injury. *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1152 (D.C. Cir. 1987). The court will "generally defer to the agency's predictive judgments as to 'the repercussions of disclosure.'" *United Techs.*, 601 F.3d at 563 (quoting *McDonnell Douglas*, 375 F.3d at 1191 n.4).

The Department determined Exemption 4 did not apply because the Block 8 information was unlikely to cause substantial competitive harm to appellants. Decision of Feb. 17, 2012 at 12. It reasoned that competitors would not be able to use gross revenue and inventory data to undercut licensees' pricing because there were too many variables, such as breed,

age, quality, and market demands, to make a price per dog calculation feasible. *See id.* at 9. Further, even if the price could be calculated, the information would be stale. *Id.* The Department also determined that release would not significantly assist competitors in gauging the scale of a licensee's operation because similar information is already in the public domain. *Id.* at 11–12.

Appellants contend that the Department's analysis improperly ignored the Humane Society's intended use of this information in "its crusade to destroy [appellants'] businesses," Appellants' Br. 53. Exemption 4, however, "does not guard against mere embarrassment in the marketplace or reputational injury" of the kind appellants describe. *United Techs*, 601 F.3d at 564. Additionally, substantial competitive harm must "flow from the affirmative use of proprietary information by competitors." *Id.* at 563 (quoting *CNA Fin. Corp.*, 830 F.2d at 1154). In asking the court to hold that the competitor rule should not apply in their case, *see* Appellants' Br. 57, appellants seem to recognize that the Humane Society is not a competitor of commercial dog breeders and dealers and that this court's precedent is against them. This court is bound by the law of the circuit. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc).

Appellants' suggestion that the Department's conclusion on substantial competitive harm impermissibly relied on the existence of similar publicly available information is based on *Painting and Drywall Work Preservation Fund, Inc. v. Department of Housing and Urban Development*, 936 F.2d 1300, 1303 (D.C. Cir. 1991). That case addresses Exemption 6 and, consequently, fails to demonstrate that the Department's Exemption 4 conclusion was arbitrary or capricious.

**B.**

Potentially more favorable to appellants, Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The parties agree the Block 8 information is a "similar file," disputing only whether "disclosure would constitute a clearly unwarranted invasion of personal privacy." To answer this question, the Department first had to determine whether "disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Consumers' Checkbook*, 554 F.3d at 1050 (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). In this context, "[a] substantial privacy interest is anything greater than a *de minimis* privacy interest." *Multi Ag*, 515 F.3d at 1229–30. If a substantial privacy interest exists, then that interest must be balanced against any public interest in disclosure. *Id.* "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). The "use for which the requestor seeks the information is not relevant for purposes of determining the public interest." *Multi Ag*, 515 F.3d at 1231 n.2 (citing *Nat'l Ass'n of Retired Fed. Employees,* 879 F.2d at 875). FOIA's "strong presumption in favor of disclosure," *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991), is "at its zenith" in this Exemption 6 analysis. *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 37 (D.C. Cir. 2002). "[U]nless the invasion of privacy is 'clearly unwarranted,' the public interest in disclosure must prevail." *Ray*, 502 U.S. at 177.

The Department concluded that Exemption 6 did not apply.

First, it found that licensees have a "limited privacy interest" in their personal financial information (gross dollars earned through regulated activities) but this interest is "lessened" because Block 8 shows only gross income and not net profit and so "does not provide a complete picture of the individual's finances." Decision of Feb. 17, 2012 at 5. Nonetheless, the Department concluded there was a non-negligible, limited privacy interest in this information. A much weaker, negligible privacy interest existed, however, in the number of animals bought and sold in a given year. The Department acknowledged that this information "could shed light on the size of a licensee's operation," but stated that similar information is independently available from the Department's published inspection reports of licensee facilities, which include the number of dogs counted at the time of the inspection. *Id.* Although the inspection count does not necessarily reflect the annual totals of animals bought and sold, it does provide some information regarding the size of the licensee's operation. The Department discounted comments expressing concern about alleged harassment incited by the Humane Society, explaining that many of the comments regarding privacy concerns did not address the specific information at issue, namely the number of dogs bought and sold and the gross revenue from regulated activities, and that "the licensees' association with the industry" is public knowledge. *Id.* at 4.

By contrast, the Department found there was "a significant public interest in release of the information at issue." *Id.* at 5. Specifically, the Block 8 information would assist the public in assessing whether the Department is fulfilling its statutory mandate to charge "reasonable" and "equitable" fees, 7 U.S.C. § 2153, and is properly assessing fees in accordance with its regulations. Decision of Feb. 17, 2012 at 7. In addition, the public could gauge the effectiveness of inspections by comparing data on Form 7003 with publicly available inspection

reports. *Id.* Balancing the two interests, the Department concluded that "[t]he public's interest in the activities of the [Department] outweigh the negligible privacy interest in the number of animals bought and sold and the minimal privacy interest in the gross dollars earned from regulated activities and the dollars upon which the fee was based." *Id*. Therefore, it concluded, "[a]lthough there is a privacy interest, release of this information would not constitute a clearly unwarranted invasion of personal privacy." *Id.*

Appellants contend that the Department's reasoning is arbitrary and capricious because they see no valid public interest in disclosure of the Block 8 information. Even if Block 8 information did provide some information about the Department, they maintain the Department understated their privacy interest and overestimated the purported public interests. The record shows that the Department "examine[d] the relevant data and articulate[d] a satisfactory explanation" for its conclusions "including a rational connection between the facts found and the choice made." *State Farm Mut. Auto. Ins.*, 463 U.S. at 43 (citation and internal quotation marks omitted); *United Techs*, 601 F.3d at 562. Contrary to appellants' position, the Department's characterization of licensees' privacy interest in their gross revenue information as "limited" was sufficiently explained, *see* Decision of Feb. 17, 2012 at 5, as was the Department's conclusion regarding comments about harassment allegedly incited by the Humane Society. Notably, publicly available licensee inspection reports and licensees' own advertising materials include their names and addresses and information about the scale of their operations.

Similarly, appellants fail to show that the Department's identification of three public interests in disclosure of the Block 8 information was arbitrary or capricious. Appellants maintain that a valid public interest under FOIA exists only if the

information sought would "contribute *significantly* to public understanding of the operations or activities of the government." Appellants' Br. 24 (quoting *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. at 495). This misstates the standard. The quote from *Department of Defense v. Federal Labor Relations Authority* on which they rely articulates the "core purpose of the FOIA," 510 U.S. at 495 (quoting *Reporters' Comm.*, 489 U.S. at 775), not the required nexus between the information at issue and public understanding of government activity. The proper inquiry is whether the information "sheds light" on government activities, *Ray*, 502 U.S. at 177–78 (quoting *Reporters' Comm.*, 489 U.S. at 773), and whether it would "appreciably further" public understanding of the government's actions, *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. at 497. A public interest exists where the public "can more easily determine" whether an agency is in compliance with a statutory mandate, *Multi Ag*, 515 F.3d at 1232, even if "the data will not be perfect" with respect to the value of the information that might be derived from that requested. *Am. Civil Liberties Union v. Dep't of Justice*, 655 F.3d 1, 14 (D.C. Cir. 2011).

The gross revenue information in Block 8 does not provide perfect data concerning whether the Department's fee schedule is reasonable and equitable and whether it is properly assessing fees, but it does add to the public's knowledge. The Department could reasonably conclude that it would assist observers in evaluating the Department's activity. Similarly, comparisons between the number of dogs reported on licensing applications and counted during inspections could assist the public in determining whether the Department is properly pursuing any significant discrepancies, which might indicate problems such as disease, business changes, or fraud in licensing applications. *See* Decision of Feb. 17, 2012 at 7. On the other hand, disclosure of redacted documents, as appellants propose, would

decrease the utility of the information because comparisons between individual businesses' Block 8 information and published inspection reports would not be possible. In any event, the suggestion for redaction was not presented to the Department and is therefore forfeited. *See, e.g.*, *Riffin v. Surface Transp. Bd.*, 733 F.3d 340, 343 (D.C. Cir. 2013). And, contrary to appellants' assertion, the record offers no indication that members of the public lack the expertise necessary to meaningfully compare inspection reports and Block 8 information. Moreover, appellants err in suggesting that a public interest in disclosure of the Block 8 information can only exist where there is evidence of agency impropriety. Although in a traditional FOIA case a requester who asserts a public interest in uncovering Government deficiencies or misfeasance must produce evidence to support that public interest, *see Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004); *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. at 497 n.6, a reverse-FOIA case presents a different situation. The Department has reasonably explained why there is a sufficient public interest and why release of this information would not constitute a "clearly unwarranted" invasion of personal privacy. To prevail, appellants must demonstrate that conclusion is arbitrary and capricious or contrary to law, and they have failed to do so. *See Multi Ag*, 515 F.3d at 1233.

There is no merit in appellants' alternative procedural arguments that the Department did not give licensees a meaningful opportunity to respond to its analysis and that by failing to "provide the submitter an opportunity to object to any decision to disclose the information" it violated its regulations, 7 C.F.R. § 1.12. Appellants cite no authority for the procedural requirements they assert and the regulatory provision on which they rely applies only to cases in which the Department cannot readily determine whether Exemption 4, not Exemption 6, applies. Reverse-FOIA actions "are in the nature of informal

adjudications," *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 337 (D.C. Cir. 1989), and in such adjudications, "agencies must satisfy only 'minimal procedural requirements,'" *Southwest Airlines Co. v. TSA*, 650 F.3d 752, 757 (D.C. Cir. 2011) (citation omitted). Appellants fail to show such procedural requirements were not met in their case.

Accordingly, we affirm the grant of summary judgment to the Department and the Humane Society.